Warren **HELLER** and Ralph
Silver, Plaintiffs

v.

**STARWOOD HOTELS AND RESORTS WORLDWIDE, INC., WHLP Acquisition LLC, Westin Realty Corp., Theodore W. Darnall, and Alan M. Schnaid, Defendants**

No. 03 CIV. 9151(SCR).

United States District Court,
S.D. New York.

Aug. 6, 2004.

Lawrence P. Kolker, Wolf, Haldenstein, Adler, Freeman & Herz, L.L.P., New York, NY, for Plaintiffs.

Peter Duffy Doyle, Kirkland and Ellis LLP, Steven M. Bierman, Sidley Austin Brown & Wood LLP, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

### I. *BACKGROUND:*

**A. Procedural Background:**

Warren Heller and Ralph Silver (collectively, the "Plaintiffs") brought this lawsuit against Starwood Hotels and Resorts Worldwide, Inc. ("Starwood"), WHLP Acquisition LLC ("WHLP Acquisition"), Westin Realty Corp. ("Westin"), Theodore W. Darnall ("Darnall") and Alan M. Schnaid ("Schnaid"; collectively, Starwood, WHLP Acquisition, Westin, Darnall and Schnaid are referred to herein as the "Defendants"). The Plaintiffs' complaint ("Complaint") alleges that the tender offer and merger proposal made by Starwood, through its subsidiary WHLP Acquisition, to the unitholders of Westin Hotels Limited Partnership (the "Partnership") was unfair because (a) the price of $625 per

Partnership unit was too low; (b) it was coercive because it was conditioned on the approval of the merger of the Partnership into a Starwood affiliate; and (c) Westin, Darnall and Schnaid failed to fulfill their fiduciary duties to protect the interests of the Partnership unitholders. The Defendants filed motions to dismiss the Complaint on or about January 26, 2004. The Plaintiffs did not respond to the motions to dismiss, but voluntarily dismissed, without prejudice, their claims against the Defendants on or about February 27, 2004.

On or about February 17, 2004, the attorneys for the Plaintiffs, Wolf Haldenstein Adler Freeman & Herz LLP (the "Plaintiffs' Counsel") made an application to this Court for attorneys' fees and reimbursement of expenses in the amount of $101,803.40 (the "Application") and an enjoinment of distribution of the proceeds of the tender offer in connection with this action. The Application contains two primary arguments: (1) the Plaintiffs' Counsel should be awarded attorneys' fees and reimbursement of expenses for contributing a benefit to the other limited partners; and (2) the Defendants should be enjoined from distributing the tender offer proceeds absent an allowance for attorneys' fees.

On or about March 9, 2004, the Defendants filed two separate motions in opposition to the Application. Starwood, WHLP Acquisition and Darnall, who are represented by Kirkland & Ellis LLP, filed one motion (the "Starwood Motion"). The Starwood Motion argues that the Plaintiffs' counsel should not be awarded attorneys' fees and the Plaintiffs' motion to enjoin the distribution of proceeds is improper. With respect to the first portion of that argument, the Starwood Motion makes four sub-arguments: (1) the Plaintiffs' claims have no merit; (2) not all of the limited partners have been benefited by the increase in Starwood's tender price;

(3) the Plaintiffs' Counsel is not responsible for the increase in the tender offer price; and (4) the Plaintiffs' Counsel has not established the amount of reasonable attorneys' fees with any specificity.

Westin and Schnaid, who are represented by Sidley Austin Brown & Wood LLP, also filed a motion in opposition to the imposition of attorneys' fees (the "Westin Motion"). The Westin Motion makes five arguments in opposition to the Plaintiffs' request for attorneys' fees: (a) the Plaintiffs may not recover attorneys' fees because they have not won any judicial relief; (b) the Plaintiffs may not recover attorneys' fees because their lawsuit was not the cause of the benefits allegedly obtained; (c) the Plaintiffs may not recover attorneys' fees because the lawsuit was frivolous when it was filed; (d) the request for attorneys' fees was unreasonable and excessive; and (e) the Court should decline to consider the Plaintiffs' request because it is subject to arbitration under the partnership agreement. On or about March 18, 2004, the Plaintiffs filed a reply to the Starwood Motion and Westin Motion.

**B. FACTUAL BACKGROUND:**

As indicated above, the Plaintiffs have voluntarily dismissed the underlying claims in connection with this matter and this Court need not adjudicate those facts. However, for the purposes of resolving the Application, a brief factual chronology is instructive.

— November 4, 2003—WHLP Acquisition, by a tender offer and proxy statement, offered to purchase any and all Partnership units for $625/unit and to merge the Partnership with a Starwood affiliate. Such offer was conditioned on the approval of a majority of the unitholders of the merger, pursuant to which all unitholders—whether they tendered

their units or not—would be bought out by WHLP Acquisition for $625/unit.

— November 18, 2003—The Partnership filed a Schedule 14D–9, which disclosed to the limited partners an opinion from Houlihan Lokey Howard & Zukin Financial Advisors ("Houlihan Lokey") that the consideration in connection with the tender offer ($625/unit) was not fair, from a financial point of view, to the limited partners. Prior to November 18th, Westin, the general partner of the Partnership, had retained Houlihan Lokey, its independent financial advisor,[1] to render an opinion (the "First Houlihan Lokey Opinion") as to the fairness of the tender offer from WHLP Acquisition.

— November 18, 2003—The Plaintiffs filed the instant lawsuit on behalf of themselves and all other similarly situated unitholders, alleging that (a) the WHLP Acquisition tender offer was too low, (b) that the WHLP Acquisition tender offer was coercive because of the merger condition, and (c) that Westin and its directors failed to fulfill their fiduciary duties. One week later, Westin, Darnall and Schnaid disclosed the existence of the lawsuit to the other unitholders.

— December 1, 2003—Kalmia Investors, LLC ("Kalmia"), a unitholder and competing bidder for the Partnership units, sent a letter to all unitholders criticizing the WHLP Acquisition tender offer and an-

nouncing that it would conduct further investigation. The letter also made reference to the Plaintiffs' lawsuit.

— December 5, 2003—WHLP Acquisition announced: (a) that only 15.33% of the units had been tendered; and (b) the extension of the tender offer until December 19, 2003.

— December 19, 2003—WHLP Acquisition announced: (a) that only 18.82% of the units had been tendered; (b) the increase of the tender offer to $700/unit; and (c) the extension of the tender offer until January 23, 2004. Subsequently, Houlihan Lokey rendered a second opinion (the "Second Houlihan Lokey Opinion"), finding that the increased price, $700/unit, was fair from a financial perspective. The Second Houlihan Lokey Opinion was disclosed to the limited partners through an amendment to the Schedule 14D–9.

— January 8, 2004—Kalmia made a competing tender offer to purchase Partnership units at $725 per unit.

— January 22, 2004—WHLP Acquisition announced: (a) that only 20.33% of the units had been tendered; (b) the increase of the tender offer to $735/unit; (c) the elimination of the merger condition; (d) the elimination of the condition that more than 50% of the limited partners tender their units; and (e) the extension of the tender offer until February 6, 2004.[2]

1. Westin has represented that it previously had retained Houlihan Lokey in connection with other tender offers from Windy City Investments, LLC and Kalmia Investors, LLC. (Westin Motion, Page 1–2 and n. 1).

2. Subsequently, the tender offer was extended until February 20, 2004.

— February 20, 2004—The tender offer closed with 24.98% of the limited partners tendering their units at $735/unit.

— February 25, 2004—The Plaintiffs submitted a voluntary dismissal of the lawsuit, which was so ordered by this Court two days later.

## II. *ANALYSIS:*

The parties do not dispute that the Plaintiffs' claims were "substantially mooted by the increase in price and elimination of the force-out merger condition", which resulted in the Plaintiffs voluntary dismissal of the lawsuit. (Application, 3–4). Likewise, there is general agreement on the chronology of events set forth above. The central issue of contention is whether the Plaintiffs' lawsuit was a substantial contributing factor to the increase in the amount of the tender offer and the elimination of the merger condition, which the Plaintiffs contend have benefited all unitholders. The Application acknowledges that the Plaintiffs' lawsuit was one of several causes of the increase in unit price and elimination of the merger condition, which other factors include: (1) Kalmia's competing bid; (2) the First Houlihan Lokey Opinion finding that the offer of $625 per unit was an unfair price; (3) Kalmia's critical letter; and (4) WHLP Acquisition's failure to attract sufficient tenders. (*Id.* at 5).[3] The Application contends that when a lawsuit is a substantial contributing factor in causing benefits[4] to a proposed class, the attorneys' fees should be awarded from that class to the attorneys who prose-

cuted the lawsuit on a contingency basis. *Id.* at 4.

The Second Circuit has consistently held that an award of attorneys' fees to a plaintiff is not automatically denied because (a) no judgment was obtained, (b) no judicial relief was ordered, or (c) that the claim was dismissed. *See e.g. Koppel v. Wien*, 743 F.2d 129, 135 (2d Cir.1984); *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996). In *Koppel*, the Second Circuit stated that the proper inquiry to be performed by the district court is a determination of whether the plaintiff's suit was a "substantial cause of the benefit obtained." *Koppel* at 135. Further, the *Koppel* Court cited with approval the holding of the Eighth Circuit that the "chronological sequence of events is an important factor in determining whether or not it can be inferred that the defendants guided their actions in response to plaintiffs' lawsuit." *Id.* (citing *United Handicapped Federation v. Andre*, 622 F.2d 342, 347 (8th Cir.1980)). Subsequently in *Savoie*, the Second Circuit clarified its position on the proper inquiry with respect to the award, or decline, of attorneys' fees. More particularly, the *Savoie* Court held that when an action has been rendered moot, as in the case at bar, it is not "advisable to decide different questions of [law] that have been rendered moot." *Savoie* at 57. Instead, "[rather] than undertake a detailed assessment of the complaint", the Second Circuit directs that district courts "focus on whether the lawsuit played a *substantial role* in the defendant's decision to take corrective action." *Id.* (emphasis added).

---

**3.** The Plaintiffs allege that their lawsuit was a cause of factors (3) and (4) above. With respect to factor (3), the Plaintiffs argue that the lawsuit was "prominently cited" in the Kalmia letter. In regard to factor (4), the Plaintiffs argue that the reason the tender offer failed to attract a majority was that the limit-

ed partners were aware of the claims of the Plaintiffs' lawsuit.

**4.** The Plaintiffs argue that the limited partners, who decided to sell, have realized an increased price per unit and those who did not sell are not being forced out.

Further, the Second Circuit has found that when, as in the case at bar, a plaintiff's lawsuit has been mooted by a defendant's corrective action, the burden is on the defendant to "establish the absence of a causal connection in order to defeat a claim for legal fees." *Koppel* at 135. Based upon the foregoing case law, this Court's analysis must focus not on the Plaintiffs' complaint and the underlying causes of action therein, but on the sequence of events that led to the modifications to the terms and conditions of the Defendants' tender offer. As set forth above, because the Defendants' subsequent actions rendered the Plaintiffs' lawsuit moot, the Defendants have the burden of proof to establish that the lawsuit did not play a substantial role in the corrective actions.

The chronology of events in connection with this transaction provides substantial evidence that factors other than the Plaintiffs' lawsuit resulted in the revised tender offer price and conditions. First, the Partnership's financial advisor issued an opinion, the First Houlihan Lokey Opinion, finding that the offer of $625/unit was too low. The Partnership retained Houlihan Lokey to evaluate the tender offer well in advance of the Plaintiffs' lawsuit and the First Houlihan Lokey Opinion was issued on the same date that the Plaintiffs filed their lawsuit. Second, as of December 5, 2003, a majority of units had not been tendered and WHLP Acquisition extended the tender offer until December 19, 2003. Third, as of December 19, 2003, a majority of units still had not been tendered and WHLP Acquisition took two actions: (a) the deadline for the tender offer was extended further; and (b) the price of the tender offer was increased to $700/unit. The Second Houlihan Lokey Opinion

opined that this increased offer was fair from a financial perspective. Fourth, Kalmia, a unitholder and competing bidder for Partnership units, made a competing tender offer at $725/unit. In response, WHLP Acquisition increased its offer to $735/unit and eliminated the merger condition.

As set forth above, the Defendants, by taking corrective action that mooted the Plaintiffs' lawsuit, have the burden of proof in this matter. In order for the Plaintiffs to prevail and be entitled to attorneys' fees, the lawsuit must have played a substantial role in the corrective action taken by the Defendants. The narrative of events set forth above describes how and why the tender offer was increased and the merger condition eliminated. More particularly, that chronology indicates that the market conditions—a lack of initial interest in the tender offer by the limited partners, independent financial advice (the First and Second Houlihan Lokey Opinions) and a competing tender offer from Kalmia—played a substantial role in the decision to increase the tender offer and eliminate the merger condition. The Defendants have satisfied their burden of proof in establishing that factors other than the Plaintiffs' lawsuit were responsible for the corrective actions. To the contrary, the Plaintiffs' have not presented any persuasive evidence to rebut the Defendants' arguments or to suggest that the Plaintiffs' lawsuit played any role, never mind a substantial role, in the revised tender offer. Accordingly, this Court does not find that the Plaintiffs' lawsuit played a substantial role in the corrective action taken by the Defendants and the Plaintiffs' Counsel's request for attorneys' fees is denied.[5]

5. Having found that the Plaintiffs are not entitled to the payment of attorneys' fees, this

Court does not address: (a) the Defendants' other arguments in opposition to the imposi-

### III. *CONCLUSION:*

For all of the foregoing reasons, the Application by the Plaintiffs' Counsel for attorneys' fees and the enjoinment of the distribution of tender offer proceeds is denied.

It is so ordered.

tion of attorneys' fees, or (b) the Plaintiffs' argument that distribution should be enjoined

until payment of the attorneys' fees.